IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGINIA WEIDERMAN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br><br><br>CANCER GENETICS, INC.,<br>GEOFFREY HARRIS, EDMUND<br>CANNON, HOWARD MCLEOD, and<br>FRANKLYN G. PRENDERHAST,<br><br><br><br>　　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Virginia Weiderman ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by CGI, Inc. ("CGI" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning CGI and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against CGI and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed reverse merger of the Company with StemoniX, Inc. ("StemoniX") (the "Proposed Transaction").

2. On August 21, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with StemoniX. Pursuant to the terms of the Merger Agreement the shareholders of StemoniX are expected to become the majority owners of CGI's outstanding common stock upon the closing of the merger. As such, following the merger, the former StemoniX shareholders are expected to hold approximately 78% of the outstanding shares of CGI Common Stock, and stockholders of CGI will retain ownership of approximately 22% of the Deemed Outstanding Shares (as defined in the Registration Statement). This equates to an Exchange Ratio of approximately 0.5541 shares of CGI common stock per one share of StemoniX common stock (the "Exchange Ratio").

3. On October 16, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against CGI and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CGI

shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of CGI shares.

9. Defendant CGI is incorporated under the laws of Delaware and has its principal executive offices located at 201 Route 17 North, 2nd Floor, Rutherford, NJ 07070. The Company's common stock trades on the NASDAQ under the symbol "CGIX."

10. Defendant Geoffrey Harris ("Harris") is and has been a director of CGI at all times during the relevant time period.

11. Defendant Edmund Cannon ("Cannon") is and has been a director of CGI at all times during the relevant time period.

12. Defendant Howard McLeod ("McLeod") is and has been a director of CGI at all times during the relevant time period.

13. Defendant Franklyn G. Prenderhast ("Prenderhast") is and has been a director of CGI at all times during the relevant time period.

14. Defendants Roberts, Harris, Cannon, McLeod, and Prenderhast are collectively referred to herein as the "Individual Defendants."

15. The Individual Defendants, along with Defendant CGI, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

16. CGI supports the efforts of the biotechnology and pharmaceutical industries to develop innovative new drug therapies. CGI has an extensive set of anti-tumor referenced data based on predictive xenograft and syngeneic tumor models from the acquisition of *vivo*Pharm, Pty Ltd. ("*vivo*Pharm") in 2017, to provide Discovery Services such as contract research services, focused primarily on unique specialized studies to guide drug discovery and development programs in the oncology and immuno-oncology fields. *vivo*Pharm is a contract research organization ("CRO") that specializes in planning and conducting unique, specialized studies to guide drug discovery and development programs with a concentration in oncology and immuno-oncology. These studies range from early compound selection to developing comprehensive sets of in vitro and in vivo data, as needed for FDA Investigational New Drug ("IND") applications.

17.     CGI offers preclinical services such as predictive tumor models, human orthotopic xenografts and syngeneic immuno-oncology relevant tumor models in its Hershey, PA facility, and is a leader in the field of immuno-oncology preclinical services in the United States. This service is supplemented with GLP toxicology and extended bioanalytical services in the CGI's Australian-based facilities in Clayton, Victoria, and Gilles Plains, South Australia (effective in February 2020).

### The Company Announces the Proposed Transaction

18.     On August 24, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> RUTHERFORD, NJ and MAPLE GROVE, MN, Aug. 24, 2020 (GLOBE NEWSWIRE) -- **Cancer Genetics, Inc.** (the "Company") (Nasdaq: CGIX), and StemoniX, Inc., today announced the entry into a definitive merger agreement. Cancer Genetics is a leader in drug discovery and preclinical oncology and immuno-oncology services. StemoniX, a private company, is a leader in developing high-throughput disease-specific human organoid platforms integrated with leading-edge data science technologies. Under the terms of the merger agreement, StemoniX will merge with a newly formed subsidiary of Cancer Genetics in an all-equity transaction. Upon shareholder approval, the combined company expects to remain listed on the Nasdaq Stock Market. StemoniX will retain its name and become a wholly-owned subsidiary of Cancer Genetics.
>
> The transaction will position the combined company to harness the synergies between two critical modalities of drug discovery and development - advanced animal models and relevant human high-throughput organoid platforms. The resulting integration of scientific and technology-based expertise, skilled management teams, and ability to offer customers an end-to-end platform will de-risk and accelerate development of preclinical and clinical pipelines for biopharma partners as well as for the proprietary pipeline of the combined company. In combination, Cancer Genetics and StemoniX currently enjoy partnerships and R&D relationships with dozens of global pharmaceutical and biotechnology companies.
>
> "The process of discovering and developing a new drug candidate takes years and comes with a price tag of hundreds of millions - or even billions - of dollars. However, we are at unique time in the drug discovery industry as the convergence of technological innovations in both biology and software will transform

conventional workflows in time and accuracy. To convert the time-consuming and labor-intensive process of developing a drug for market, we now look to supplement traditional discovery and drug approval mechanisms to include humanized cell-based assays with artificial intelligence (AI) along with our core *vivo*Pharm business. Given that our strategy and approach are strongly aligned with those of StemoniX, we are pleased to have moved forward with this proposed transaction," stated Jay Roberts, Chief Executive Officer of Cancer Genetics.

"The pharma industry and society are at a critical pivot point. Viral pandemics and diseases lacking treatments require a new way of innovation. The proposed merger expects to expand our ability to engage with a larger audience of potential partners and expand our internal capabilities as we deliver on our mission to rapidly discover the safest and most effective therapeutics on behalf of our partners and our shareholders. The mission will stay consistent - allow scientists to quickly and economically conduct high-throughput toxicity and drug development studies in ready-to-assay plates containing functional microOrgans®," stated Ping Yeh, Chief Executive Officer of StemoniX.

**ABOUT THE TRANSACTION**

Pursuant to the merger agreement, Cancer Genetics will acquire all of the outstanding capital stock of StemoniX in exchange for a number of shares of its common stock which will represent approximately 78% of the outstanding common stock of Cancer Genetics, subject to certain adjustments and prior to the effects of the financing referred to below, with the current equity holders of Cancer Genetics retaining 22% of the common stock immediately following the consummation of the merger.

The Boards of Directors of both companies have approved the proposed merger, which is expected to close in the fourth quarter of 2020, subject to the approval of the shareholders of both Cancer Genetics and StemoniX, financing and other customary closing conditions.

H.C. Wainwright & Co. is acting as financial advisors to the Board of Directors of Cancer Genetics, and Lowenstein Sandler is acting as its legal counsel. Northland Securities, Inc. is acting as financial advisor to the Board of Directors of StemoniX and Taft, Stettinius & Hollister is acting as its legal counsel.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT**

19. On October 16, 2020, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

20. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Sales Process**

21. The Registration Statement contains information concerning the sales process leading up to the Proposed Transaction, but fails to disclose material information concerning such.

22. The Registration Statement notes that the Company entered into several confidentiality agreements with potential suitors. However, the Registration Statement fails to disclose the terms of the confidentiality agreements, including whether any of the agreements contained standstill provisions with "don't ask, don't waive" provisions that would precluding interested parties from making superior offers for the Company.

23. The Registration Statement also notes that the Company received indications of interest from other potential suitors. However, the Registration Statement fails to adequately

7

disclose the terms and values of all indications if interest and proposals between CGI and other potentially interested parties.

24. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction, as a reasonable shareholder would want to know information concerning other potential buyers.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Projections and Analyses

25. The Registration Statement entirely omits any projections prepared by the Company's or StemoniX's management concerning the Proposed Transaction as well as any fairness opinion and financial analyses.

26. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the disclosure of the such projected financial projections and analyses is material because it would provide the Company's shareholders with an objective basis to project the Company's and the combined company's future financial performance, as well as assess the fairness of the deal.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Wainwright

27. The Registration Statement omits material information concerning potential conflicts of interest involving the Company's financial advisor, H.C. Wainwright & Co. ("Wainwright").

28. Specifically, the Registration Statement fails to disclose: (i) the compensation Wainwright has received or expects to receive in connection with its engagement; (ii) the amount

of compensation that is contingent upon the consummation of the Proposed Transaction; and (iii) whether Wainwright has performed any past services for any parties to the Merger Agreement, including the timing and nature of such services and the amount of compensation received for such.

29. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

30. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

31. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

32. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any

material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

33. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

34. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

35. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

36. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was

disseminated, to corroborate that there are no material misstatements or omissions.

37. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

38. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

39. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of CGI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of CGI, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

44. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 1, 2020                                         Respectfully submitted,

                                                                By: */s/ Joshua M. Lifshitz*
                                                                Joshua M. Lifshitz

Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*